UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,

                Plaintiff,                CR 05-284-HA

    v.

                                     OPINION AND ORDER

ROBERTO MORALES-PUERTO,

                Defendant.

Defendant was indicted in July 2005 for a violation of U.S.C. 1326(a) and (b)(2) for illegal reentry into the United States. On October 21, 2005, defendant filed a Motion to Suppress Statements and Evidence, seeking to suppress all statements made to the City of

Portland police and federal immigration officers, and any identity evidence obtained, including fingerprints and a photograph. The government filed a response to the Motion to Suppress on December 16, 2005, and an evidentiary hearing was held on January 23, 2006. For the following reasons, defendant's motion is denied.

**FACTUAL BACKGROUND**

A few days before June 15, 2005, Portland Police Officer Castlio was patrolling the streets of Portland's eastside conducting a "livability mission" to investigate the welfare and conduct of homeless persons and others. Officer Castlio encountered defendant and engaged him in conversation. Defendant voluntarily gave his name and date of birth. Officer Castlio also obtained a photograph of defendant.

Officer Castlio later used the identification information obtained from defendant to check for outstanding warrants and discovered that defendant was wanted on a non-criminal United States Immigration warrant. This information and defendant's photograph was shared during roll call with other officers patrolling the area.

On June 15, 2005, Portland Police Officers Stephen Gandy and Stephen Mirau were patrolling Portland's eastside when they spotted defendant sitting on the curb at Southeast Sixth Avenue and Burnside. The officers did not suspect defendant of criminal activity, but recognized him from the photograph distributed by Officer Castlio.

Officers Gandy and Mirau approached defendant, confirmed his identity, and detained him. Sergeant Bahnson arrived on the scene and called Special Agent Sam Billison of Immigration and Customs Enforcement (ICE). After confirming defendant's identity, none of the

Portland police officers questioned or handcuffed defendant before Special Agent Billison arrived.

During Special Agent Billison's questioning, defendant gave his name and admitted that he had entered the country illegally. Defendant also stated that on two previous occasions he had been removed from the United States by immigration authorities. Billison then halted the interview, handcuffed defendant, and took him to the ICE facility for further processing.

At the ICE facility, defendant was advised of his constitutional rights in Spanish and English, acknowledged that he understood his rights, and waived them. Special Agent Billison continued his interrogation, and defendant provided a sworn statement acknowledging his identity, Honduran citizenship, date of birth, illegal reentries, locations of reentry, and that he had never applied for permission to reenter the United States.

Defendant was fingerprinted by ICE on June 16, 2005. Those fingerprints were given to the Portland Police Bureau for comparison with known fingerprints of defendant for identity purposes.

## STANDARDS

The Fourth Amendment prohibits unreasonable searches and seizures and its protections extend to brief investigatory stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). During a brief investigatory stop, the Fourth Amendment is satisfied if the officer had a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (creating the "*Terry* Stop" exception to Fourth Amendment protection during brief investigatory stops).

Law enforcement does not violate the Fourth Amendment merely by approaching individuals on the street or in other public places and engaging in a voluntary conversation.

*United States v. Drayton*, 536 U.S. 194, 200 (2002). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means." *Id.* at 201. It is not considered a seizure if a reasonable person would feel free to terminate the encounter. *Id.*

The Supreme Court set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), the proper legal standard for analyzing the admissibility of a defendant's statements where the defendant is in police custody and subject to interrogation. The *Miranda* Court held that the Constitution prohibits the government from using any of defendant's statements that are the product of a custodial interrogation unless the government demonstrates it used sufficient procedural safeguards to secure defendant's Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 444-45. Specifically, the government must advise the defendant of the defendant's right to remain silent and the right to the presence of counsel before beginning custodial interrogation (referred to as *Miranda* warnings). *Id.* at 479.

The defendant may waive these rights, provided that the waiver is voluntary, knowing, and intelligent. *Id.* A valid waiver turns on the totality of the circumstances, including the defendant's background, experience, and conduct. *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979).

*Miranda* warnings are not required before questioning in the context of a civil deportation hearing because deportations are civil in nature and are not criminal prosecutions. *Unites States v. Salgado*, 292 F.3d 1169, 1173 (9th Cir. 2002) (quoting *United States v. Solano-Godines*, 120 F.3d 957, 960 (9th Cir. 1997)).

Evidence taken solely for identification purposes is not suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *see also United States v. Garcia-Beltran*, 389 F.3d 864, 867 (9th Cir. 2004) (fingerprint evidence taken solely for identification purposes is admissible); *United States v. Parga-Rosas*, 238 F.3d 1209, 1215 (9th Cir. 2001) (same); *United States v. Guzman-Bruno*, 27 F.3d 420, 421 (9th Cir. 1994) ("A defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search.").

However, identity evidence taken for investigatory purposes may be subject to suppression. *Davis v. Mississippi*, 394 U.S. 721, 724 (1969) (fingerprints obtained as a consequence of an illegal arrest for the purpose of pursuing a criminal law violation are subject to suppression). Fingerprints are taken for an investigatory purpose when they are taken in an attempt to connect a defendant to a crime with which the defendant was not already connected. *Garcia-Beltran*, 389 F.3d at 867.

## ANALYSIS

### 1. Illegality of Seizure

Defendant alleges that the initial stop by Officer Castlio was unjustified and not a proper *Terry* Stop. Defendant also argues that Officers Gandy and Mirau improperly detained and questioned him based on information obtained through the unlawful stop by Officer Castlio. Moreover, defendant asserts that Oregon law prohibits police from detaining and arresting aliens solely for a purported violation of federal immigration law.

The initial encounter between defendant and Officer Castlio was consensual and did not violate defendant's Fourth Amendment rights. *Drayton*, 536 U.S. at 200-201. Officer Castlio

was engaged in routine law enforcement activity, conducting a "livability mission." Defendant voluntarily provided his identity and consented to a photograph during a non-intrusive conversation with Officer Castlio. This information was later used by Officer Castlio to discover that defendant was wanted on a non-criminal immigration warrant. The subsequent arrest of defendant by Officers Gandy and Mirau was an arrest properly based on information provided through official police channels. *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996). Neither encounter constituted a *Terry* stop.

The initial encounter between defendant and Officer Castlio was proper, and in light of that encounter, the detention of defendant by Officers Gandy and Mirau was also proper. Defendant had disclosed his identity to Officer Castlio voluntarily, who subsequently discovered the outstanding federal immigration warrant against defendant. Officers Gandy and Mirau merely confirmed defendant's identity and engaged in no further questioning. Shortly thereafter, Sergeant Bahnson arrived on the scene, did not question defendant, and called for ICE Special Agent Billison.

Defendant also argues his arrest was improper under Oregon Revised Statute §181.850, which prohibits state law enforcement from using agency "moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws." O.R.S.181.850. Defendant asserts that his arrest expended state resources for the sole purpose of delivering defendant to federal immigration officials.

The officers involved in defendant's initial street encounter and subsequent arrest were patrolling for ordinary law enforcement purposes, and not for the purpose of detecting federal

immigration violations. This is not a violation of Oregon law. *State v. Rodriguez*, 854 P.2d 399, 401-02 (Or. 1993) (finding no violation of O.R.S. 181.850(1) when police officers accompanied federal immigration officials to arrest defendant because they were not there for the purpose of detecting or apprehending defendant but were there to determine whether any state law had been violated).

Moreover, the *Rodriguez* court held that a violation of O.R.S. 181.850 does not require suppression of evidence. The court noted that even if the police officers were present in part to apprehend the defendant on the federal immigration warrant, and if such mixed motives violated the statute, the defendant had "failed to demonstrate that suppression of evidence is a necessary consequence of such a violation." *Id.* at 402. The *Rodriguez* court noted several examples in which evidence obtained in violation of state law was not a Fourth Amendment violation and not subject to suppression. *Id*.

### 2. Suppression of Identity Evidence

Defendant argues that all evidence obtained by law enforcement as a result of defendant's custodial interrogation and improper arrest is subject to exclusion, including defendant's fingerprints. This argument is rejected.

First, as discussed above, defendant was not detained unlawfully. Second, even if defendant's detention had been improper, his fingerprints and identity evidence are not subject to exclusion because they were obtained solely to confirm his identity, not for investigatory purposes. *See Lopez-Mendoza*, 468 U.S. at 1039; *Garcia-Beltran*, 389 F.3d at 867; *Parga-Rosas*, 238 F.3d at 1215; *Guzman-Bruno*, 27 F.3d at 421.

Fingerprints are not suppressed if the purpose in taking them was only to further establish identity and not to connect a defendant to a crime with which the defendant was not already connected (*i.e.,* for an investigative purpose). *Garcia-Beltran*, 389 F.3d at 867. The *Garcia-Beltran* court ordered a remand to determine whether the fingerprint evidence was obtained solely for identification or whether it was also obtained for investigatory purposes. Defendant relies improperly on the subsequent unpublished opinion issued by the district court following remand. Defendant also relies on *United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005) to support his suppression motion. This reliance is misplaced. Defendant's authorities involved defendants who had given false identification information. The fingerprint evidence in those cases was used to identify the defendants and link them to immigration crimes.

This case is analogous to *Parga-Rosas*, a case in which the defendant had provided a "green card" which gave law enforcement his identity and provided an independent connection to his crime, resulting in his fingerprint evidence being used solely for identification purposes. 238 F.3d at 1211. Here, as in *Parga-Rosas*, there was an independent connection between defendant and the warrant that was unrelated to the fingerprint evidence. Prior to his arrest, defendant had voluntarily provided his name and date of birth. With that information, law enforcement connected him to an outstanding federal immigration warrant. Subsequent to his arrest, defendant's fingerprints were obtained solely to confirm his voluntarily disclosed identity, and not to connect him with any crime.

### 3.  Suppression of Statements

Defendant argues that he was subject to custodial interrogation without receiving *Miranda* warnings, and that his statements should be suppressed.

As discussed above, the initial encounter between Officer Castlio and defendant was voluntary and non-custodial. Defendant was free to terminate the conversation at any time. Accordingly, *Miranda* warnings were not required and the officer properly obtained defendant's name, date of birth, and photograph.

On June 15, 2005, Officers Gandy and Mirau recognized defendant as the subject of a non-criminal U.S. Immigration warrant. The officers questioned defendant as to his identity, date of birth, and nationality. Defendant was in custody, but *Miranda* warnings are not required before questioning in the context of civil deportation matters. *Salgado*, 292 F.3d at 1173; *Solano-Godines*, 120 F.3d at 960. The questions asked by Officers Gandy and Mirau were related to the civil deportation matter.

Defendant was then interrogated by Special Agent Billison of the ICE. This questioning was also related to the civil deportation matter, and not subject to *Miranda*. Defendant again provided his name and acknowledged that he was in the United States illegally, then admitted to having been removed from the country on two occasions. Special Agent Billison realized this voluntary admission created a criminal issue, immediately stopped the interview, and transported defendant to the ICE facility. Defendant was advised of his constitutional rights, he acknowledged his understanding of those rights, and gave a knowing, intelligent, and voluntary waiver. After waiving his rights, defendant provided a detailed written statement.

Defendant was never improperly interrogated in violation of *Miranda*. Accordingly, his verbal and written statements are admissible.

/ / /

/ / /

**CONCLUSION**

For the reasons provided above, defendant's Motion to Suppress Identity Evidence and Statements [15] is denied.

IT IS SO ORDERED.

Dated this __26____ day of January, 2006.

                                                                        /s/Ancer L.Haggerty

                                                                         ANCER L. HAGGERTY
                                                                       United States District Judge